**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| MICAELA MORALES, | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | No. EP-12-CV-0103-RFC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
|      Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## <u>PROCEDURAL HISTORY</u>

On January 16, 2009, Plaintiff filed her applications for DIB and SSI, alleging disability due to impairments that became disabling on April 4, 2007, later amended to January 11, 2008.

(R:16, 45, 112)[1]  The applications were denied initially and on reconsideration.  (R:80, 91)

Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing to review

Plaintiff's application *de novo* on September 30, 2010, at which Plaintiff was represented by an

attorney and testified through a Spanish interpreter.  (R:25-54, 72)  The ALJ issued his decision

on November 23, 2010, denying benefits.  (R:16-24)  Plaintiff's request for review was denied

by the Appeals Council on January 26, 2012.  (R:4)

On March 26, 2012, Plaintiff submitted her complaint along with a motion to proceed *in*

*forma pauperis*.  (Doc. 1)  The motion was granted and her complaint was filed. (Docs. 4, 5)

The Commissioner filed an answer and transcript of the administrative proceedings on May 29,

2012.  (Docs. 14, 17)  On June 29, 2012, Plaintiff's brief was filed.  (Doc. 18)  On July 30, 2012,

the Commissioner filed his brief in support of the decision to deny benefits.  (Doc. 19)

## ISSUES

Whether substantial evidence and relevant legal standards support the Commissioner's

decision denying disability benefits.  Specifically, Plaintiff presents two arguments:

(1)     The ALJ erred in failing to include a sit/stand option in his RFC finding; and

(2)     The ALJ's finding that Plaintiff retained the ability to perform her past relevant
        work as a sewing machine operator is not supported by substantial evidence.

(Doc. 18:2)

---

[1] Reference to documents filed in this case is designated by (Doc. [docket entry number(s)]:[page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by (R:[page number(s)]).

## DISCUSSION

I.    **Standard of Review**

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In reviewing the substantiality of the evidence, a court must consider the record as a whole and must take into account whatever in the record fairly detracts from its weight.  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*.  *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989).  It may not substitute its own judgment even if the evidence preponderates against the [Commissioner's] decision, because substantial evidence is less than a preponderance.  *Harrell v. Bowen*, 862 F.2d

3

471, 475 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, and not the courts, to resolve.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

II.   **Evaluation Process**

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work.   20 C.F.R. § 404.1520.   A person's residual functional capacity (RFC) is what he can still do despite his limitations or impairments.  20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

### III.    The ALJ's Hearing Decision

First, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2012 and that Plaintiff had not engaged in substantial gainful activity since January 11, 2008, the amended alleged onset date.  (R:18)  At the second step, the ALJ, applying the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), found that Plaintiff had the following severe impairments: obesity, liver disease, hypertension, early type II diabetes, an affective disorder variously diagnosed as a mood disorder or depressive disorder, and back and neck pain.  (R:17, 18)  The ALJ also found that Plaintiff did not have a vision problem.  (R:18)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments.  (R:18-20)

The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with postural limitations of no more than frequently climbing ramps and stairs, occasionally climbing ladders, ropes, and scaffolds, and frequently balancing, stooping, kneeling, crouching, and crawling, and limited to unskilled work of a simple nature in which she is required to maintain concentration, persistence and pace for no more than two hours at a time, and that does not require literacy in the English language.  (R:20-23)

At the fourth step, the ALJ found that Plaintiff is capable of performing her past relevant work as a sewing machine operator both as actually and generally performed.  (R:23)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 11, 2008, through the date of the decision.  (R:24)

**IV.      The ALJ's RFC Determination Omitting a Sit/Stand Option**

Plaintiff contends that the stand and/or walk and sitting limitations the ALJ assessed in Plaintiff's RFC are inconsistent with the evidence of the record.  (Doc. 18:4)  Acknowledging the absence of a medical opinion reflecting a need for a sit/stand option, Plaintiff argues that the evidence of record supports such a limitation.  (*Id*.)  The ALJ found that Plaintiff has extreme truncal obesity, experiences joint pain, and has liver disease; these conditions result in her symptoms of pain and discomfort.  (*Id*.)  Plaintiff testified that: she stopped working as a sewing machine operator because she was not able to do enough work due to her impairments; she can only walk one to two blocks before her legs, back, and stomach start to hurt; she experiences dizziness and headaches; she can only sit for about forty-five minutes before she experiences pain or discomfort; and she can only stand for about thirty minutes.  (Doc. 18:4-5)  Plaintiff argues that she is only required to show objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged pursuant to 42 U.S.C. § 423(d)(5)(A), and not objective medical evidence of the pain itself or its severity. (Doc. 18:5)

Once objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms is presented, the ALJ must evaluate the applicant's allegations of the limiting affects of such symptoms in light of the other evidence in the record. 28 C.F.R. § 404.1529(c)(4).  While Plaintiff recites her own allegations of functional limitations, she does not address any of the ALJ's analysis regarding how the rest of the record is inconsistent with such allegations to the extent they exceed his RFC determination.   She

provides no argument as to how the rest of the evidence in the record would support or be consistent with Plaintiff's alleged limitations in standing, walking, or sitting.  Conversely, the ALJ properly considered not only Plaintiff's alleged functional limitations, but also her daily activities, her treatment records, the consultative examination report, and the state agency medical consultant's RFC assessment in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine how they limit Plaintiff's ability to function.

Despite complaints to Dr. Eleje during her consultative examination that she experienced ankle, hip, knee, and joint pain; and difficulty getting out of a chair, walking, and exercising, Dr. Eleje found that Plaintiff had no physical limitations with sitting, standing, or moving about, only with lifting.  (R:310-311)  Specifically, Dr. Eleje found that Plaintiff's gait and station showed normal arm swing, and normal heel and toe and tandem walking with unassisted walking.  (R:310)  Dr Eleje found no muscle atrophy or abnormal movements bilaterally. (R:310)  Plaintiff also had full range of motion.  (R:311)

The state agency medical consultant who assessed Plaintiff's RFC in March 2009 opined that Plaintiff could perform light work and did not indicate that Plaintiff required a sit and stand option.  (R:23, 293, 299)  That RFC assessment was affirmed on reconsideration.  (R:282)

Further, none of Plaintiff's treatment records reflect complaints of pain when sitting, standing, or walking, despite her health care providers' continued direction for her to exercise, walk daily, modify her diet, and lose weight.  (R:221, 225-227, 232-234, 237–239, 241, 244, 245-246, 247-248, 249)  Although her records frequently indicate that Plaintiff was noncompliant with these orders, none of the notes contain any explanation for such failure.

(R:218-221, 225, 232, 237, 245, 247, 249)   Plaintiff was also often noncompliant with her medication.   (R:218, 225, 249)   Failing to comply with recommended medical treatment is grounds for denying disability.   *See Johnson v. Sullivan*, 894 F.2d 683, 685, n.4 (5th Cir. 1987). However, despite Plaintiff's noncompliance, several of Plaintiff's treatment notes reflect that Plaintiff was able to move all of her extremities well.   (R:233, 238, 241)   Several treatment records also do not mention joint or any other pain, some affirmatively indicating no other important conditions worth noting.   (R:225-227, 232-234, 240-241, 247-248)   Those that do, only vaguely state "joint pains" under "problems" or "plan note" (R:238-239, 244, 246), describe Plaintiff's complaint regarding arthritis being that, after making tamales two weeks ago, she had developed weakness in her hands bilaterally, which had since resolved (R:249), or state that Plaintiff's joint pains are stable, no complaints, and under plan notes states "Joint Pains: Ibuprofen with food."   (R:221)   Plaintiff's treatment records also fail to reflect any complaint of significant side effects or problems with her medication for her hypertension or any limiting symptoms related to her blood pressure, which appeared to be well controlled with medication. (R:21-22)

The ALJ also addressed Plaintiff's complaints of abdominal pain and bloating, which she alleged was due to a liver disease she had had for two years.   (R:22)   Dr. Eleje found no signs of liver disease on examination and obtained laboratory studies showing normal liver values. (R:22)   None of Plaintiff's treatment records from Project Vida reflect any complaints of symptoms related to liver disease such as abdominal pain and bloating, nor observations or treatment for any such problem; except for a laboratory study dated August 26, 2009, which

showed a slightly low value, Plaintiff's liver values were otherwise normal. (R:22) Failure to seek treatment is relevant to the credibility determination of Plaintiff's subjective complaints. *See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983). It is also an indication of nondisability. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ also properly considered Plaintiff's daily activities, including caring for her personal needs and her home, shopping, caring for her grandchildren, and visiting family in Mexico. (R:22-23)

The ALJ did not err by considering whether the evidence of record as a whole was consistent with Plaintiff's alleged limitations. The only evidence supporting or consistent with a need for a sit/stand option is Plaintiff's testimony, which the ALJ found credible only to the extent it was consistent with his RFC assessment, and thus not credible to the extent she alleged greater limitations. (R:21) It is for the ALJ and not the courts to weigh the evidence and make credibility determinations. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The ALJ addressed the relevant evidence, made credibility determinations, and explained the reasons for his RFC determination.

Moreover, the proper question for this Court is not whether there is evidence in the record to support a sit/stand limitation, but whether there is substantial evidence in the record to support the ALJ's credibility finding and his RFC determination, excluding the need for a sit/stand option. Based on the Court's review of the record, set forth above, the Court finds that there is substantial evidence to support the ALJ's determinations. Consequently, Plaintiff is not entitled to relief on this claim.

**V.      The ALJ's Step-Four Finding**

Plaintiff argues that where physical and mental impairments wax and wane in severity, the ALJ is required to determine whether "the claimant can hold whatever job he finds for a significant period of time." (Doc. 18:6-7, quoting *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) and citing *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002)) Plaintiff argues that her reports to the SSA, her testimony, and her daily activities put the ALJ on notice regarding an issue of her ability to perform work on a sustained basis, requiring the ALJ to make a specific finding on the issue, which he did not do, necessitating reversal. (Doc. 18:7-8)

Plaintiff highlights her own allegations. (Doc. 18:7) In February 2009, Plaintiff answered that she does not finish what she starts. (R:175) In December 2009, she stated that her condition had worsened in June 2009 when her mental health issues began; she felt like she no longer wanted to live. (R:149) In describing how her condition affected her ability to care for her personal needs and how her daily activities had changed since she last completed a disability report, Plaintiff stated "sometimes I don't want to do anything, get out of bed or make my bed. All I want to do is stay in bed." and "I no longer feel motivated to do anything. I don't want to go out, I want to be isolated, I don't want to live." (R:152) In January 2010, Plaintiff explained that she sometimes could not do anything because of her illnesses. (R:157)

The Commissioner counters that the issue of whether Plaintiff has the ability to perform work on a sustained basis is not required to be determined in every case, but only where a claimant's condition "waxes and wanes in its manifestation of disabling symptoms." (Doc. 19:8, citing *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)). The Commissioner contends that

10

Plaintiff has not shown that she has such a condition, pointing to the following evidence.  (Doc. 19:8)  Plaintiff's hypertension was controlled by medication and her treatment notes did not indicate complaints of significant side effects.  (R:21-22, 221, 234)  Plaintiff's gait and ambulation was normal despite complaints of back, neck, and joint pain.  (R:22, 310-311)  Finally, Plaintiff's depression was noted as stable when Plaintiff was compliant with her antidepressant medication and counseling.  (R:218, 221)

Plaintiff's allegation that she sometimes could not do anything because of her illnesses is vague and fails to allege any specific symptom that waxed and waned causing such inability. Such allegation is also not supported by any treatment records.  Her allegation that she no longer felt motivated to do anything was in her December 2009 report, submitted a month after her last treatment record reflecting that her depression was stable.  (R149-152, 218-221)

Plaintiff first complained of depression at her July 27, 2009 appointment at Project Vida, at which time she was prescribed medication and was referred to counseling.  (R:232-234)  At that time, she complained of being tearful, having low energy and trouble concentrating, and feeling disinterested; she did not complain of sleep disturbance, anxiety, or feeling suicidal. (R:232) She attended behavioral health follow ups on July 29, 2009 and August 5, 2009, at which times she was listed as compliant with medications and counseling.  (R:230-231)  On September 8, 2009, it was noted that Plaintiff had failed to attend her last counseling session, that she complained only of insomnia, not of being tearful, having low energy, and feeling anxious or suicidal.  (R:225)  It was noted that there had been no change in her depression, Plaintiff's dosage was increased, and Plaintiff was advised to continue seeking counseling.

11

(R:225-227) On November 30, 2009, Plaintiff had no complaints regarding her depression, stated that counseling was helping and that she was keeping busy by spending time with her grandchildren; her depressive disorder was noted as being stable.  (R:218-221)  There are no more recent relevant medical records in the administrative record. At the hearing in September 2010, when Plaintiff was asked if she was receiving any treatment for depression other than medicine, she testified that Project Vida had sent her to see someone, but that she "couldn't take it."  (R:42)

Any fluctuation in Plaintiff's symptoms appears to result from her noncompliance with prescribed treatment rather than a waxing and waning inherent in her conditions, which could not be stabilized through reasonable treatment. (E.g., R:225, 232, 237) Further, the ALJ implicitly rejected Plaintiff's relevant allegations as not credible, when he found Plaintiff's allegations to be credible only to the extent they are consistent with his RFC assessment.  (R:21)

Remand for an ALJ's failure to make an explicit finding regarding the ability to maintain employment is required only if there is "evidence that [the] claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (per curiam).  Here, the ALJ explained that RFC is the "ability to do physical and mental work activities on a sustained basis" citing 20 C.F.R. § 404.1545 and SSR 96-8p, both of which reiterate this definition.  (R:17)  Plaintiff failed to present evidence that Plaintiff's relevant allegations, and the manner in which her conditions waxed and waned, if at

all, were not adequately taken into account in the ALJ's RFC determination.  Therefore no separate capable-of-maintaining-employment finding was necessary in this case and the absence of such a finding does not entitle Plaintiff to remand.  Plaintiff's claim for relief on this ground is denied.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence, and comports with relevant legal standards.  Based on the foregoing, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

**SIGNED and ENTERED on March 7, 2013.**

**ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE**